**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

RICHARD HIGHLANDER,      :
                        :   Civil Action No. 03-1234 (JEI)
         Petitioner,  :
                        :
         v.           :   **OPINION**
                        :
ROY L. HENDRICKS, et al.,  :
                        :
        Respondents.  :

**APPEARANCES:**

Petitioner pro se
Richard Highlander
220407/SBI#74357B
South Woods State Prison
215 Burlington Road South
Bridgeton, NJ 08302

Counsel for Respondents
Michael J. Williams
Deputy Attorney General
Division of Criminal Justice
Appellate Bureau
P.O. Box 086
Trenton, NJ 08625

**IRENAS**, District Judge

    Petitioner Richard Highlander, a prisoner currently confined at South Woods State Prison, has submitted a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  The respondents are Warden Roy L. Hendricks and the Attorney General of New Jersey.

    For the reasons stated herein, the Petition must be denied.

I.   <u>BACKGROUND</u>

A.   <u>Factual Background</u>

The relevant facts are set forth in the opinion of the Superior Court of New Jersey, Appellate Division, on Petitioner's direct appeal of his conviction.[1]

> Defendant was found guilty of murder, possession of a weapon for an unlawful purpose, criminal contempt, aggravated assault and unlawful possession of a weapon. He was found not guilty of attempted murder and another aggravated assault charge.  The jury did not impose the death penalty.
>
> ...
>
> There is no question that defendant killed the victim, a former girlfriend.  He lay in wait and shot her three times in the chest as she emerged from a restaurant with a male acquaintance and then fled.  He told at least six people he would kill the victim.  He told a friend that he would shoot her in the head, neck and chest with a .357 magnum.  Before his arrest, he revealed the killing to several people, and after his arrest, made several confessions to law enforcement authorities.  He told prosecutor's investigators that he had purchased the .357 revolver, searched out the victim, found her at the restaurant and killed her.  He had earlier told FBI agents that "I knew it when I did it, and if I had to do it all over again, I would have unloaded the pistol on her, and the guy, too," and "I knew I was going to kill that m----- f-----.  It was premeditated."
>
> Defendant had severely beaten the victim about five weeks before he killed her.  She went to the

_____

[1] Pursuant to 28 U.S.C. § 2254(e)(1), "In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."

police, filed criminal charges and obtained a
restraining order against him.  Before and after he
killed the victim, he told several people that he had
to kill her because he knew she would press criminal
charges against him and he did not want to return to
jail for violating probation.

Defendant contended that although he was the
killer he was not a murderer.  He asserted that he was
guilty of either passion/provocation manslaughter or
that his intoxication at the time of the shooting
diminished his capacity to perform the slaying
purposefully and knowingly.  ...

(Ra3.)

B.   Procedural History

On July 21, 1989, pursuant to a jury verdict in the Superior

Court of New Jersey, Law Division, Atlantic County, Petitioner

was convicted of murder, possession of a weapon for an unlawful

purpose, criminal contempt, aggravated assault, and unlawful

possession of a weapon, all related to the murder.[2]  By Opinion

entered April 8, 1993, the Superior Court, Appellate Division,

affirmed Petitioner's conviction and sentence.  By Order filed

September 10, 1993, the Supreme Court of New Jersey denied

certification.  Petitioner did not petition the Supreme Court of

the United States for a writ of certiorari.

_____

[2] All charges related to the March 1988 assault of Gloria
Simonelli, the murder victim, were dropped before trial.  The
aggravated assault referred to in connection with the murder is
the aggravated assault of Ms. Simonelli's companion on the night
of Ms. Simonelli's murder in April 1988.  Hereafter, the term
"the aggravated assault" will refer to the March aggravated
assault of Ms. Simonelli and the term "the murder" will refer to
the April murder of Ms. Simonelli and charges related to the
events of that evening.

3

On January 11, 1994, Petitioner filed a state-court petition for post-conviction relief.  The trial court denied the PCR petition, without an evidentiary hearing, by Order dated October 16, 1995.  On September 30, 1996, Petitioner filed with the Appellate Division a motion for leave to file Notice of Appeal nunc pro tunc, which the Appellate Division granted by Order filed October 21, 1996.  By Opinion filed April 3, 1998, the Appellate Division affirmed the denial of the PCR petition.  By Order filed October 7, 1998, the Supreme Court of New Jersey denied certification.

Petitioner filed a second petition for post-conviction relief on November 25, 1998.  After hearing, the trial court denied the second PCR petition by letter opinion and an order dated August 18, 1999.  On December 10, 2001, the Appellate Division affirmed the denial of relief on the second PCR petition, because Petitioner's claims "are clearly without merit, R. 2:11-3(e)(2) or are procedurally barred, R. 3:22-4."  (Ex. Ra22.)  By Order filed June 6, 2002, the Supreme Court of New Jersey denied certification.

On March 17, 2003, this Court received this Petition, dated March 12, 2003, for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner asserts as grounds for relief: (1)

ineffective assistance of trial counsel,[3] (2) ineffective assistance of appellate counsel, (3) and (4) the trial court erred in admitting Petitioner's confessions obtained after he was represented by counsel, based in part on a flawed factual finding, in violation of Petitioner's Fifth and Sixth Amendment rights, and (5) in the aggregate, the errors alleged violated Petitioner's due process right to a fair trial.  Respondents have answered, asserting that certain claims are unexhausted,[4] and that all claims are meritless.  Petitioner has filed a Traverse in support of the Petition.  This matter is now ready for determination.

---

[3] Petitioner asserts seven separate errors:  (a) and (b) counsel failed to object to admission of confessions obtained improperly after Petitioner was represented by counsel, based in part on flawed factual understandings, (c) counsel failed to challenge in-court identifications, (d) counsel failed to call exculpatory witness Darlene Florich, (e) counsel failed to object to testimony of police informant Robert Brooks, (f) counsel failed to object to the admission of hearsay testimony, and (g) counsel's errors in the aggregate constitute ineffective assistance of counsel.

[4] Respondents assert that the unexhausted claims consist of Petitioner's claim of ineffective assistance of trial counsel based upon the admission of hearsay evidence, his claim of ineffective assistance of appellate counsel, his claim that admission of his confessions violated his Fifth Amendment right to remain silent, and his claim that cumulative errors deprived him of due process.

## II.   28 U.S.C. § 2254

As amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254 now provides, in pertinent part:

> (a) The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

> With respect to any claim adjudicated on the merits in state court proceedings, the writ shall not issue unless the adjudication of the claim

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determinated by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court decision is "contrary to" Supreme Court precedent "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases," or "if the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] Court and nevertheless arrives at a result different from [the Court's] precedent." Williams v. Taylor, 529 U.S. 362, 405-06 (2000) (O'Connor, J., for the Court, Part II).  A state court decision "involve[s] an

6

unreasonable application" of federal law "if the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case," and may involve an "unreasonable application" of federal law "if the state court either unreasonably extends a legal principle from [the Supreme Court's] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply," (although the Supreme Court expressly declined to decide the latter). Id. at 407-09.  To be an "unreasonable application" of clearly established federal law, the state court's application must be objectively unreasonable. Id. at 409.  In determining whether the state court's application of Supreme Court precedent was objectively unreasonable, a habeas court may consider the decisions of inferior federal courts. Matteo v. Superintendent, 171 F.3d 877, 890 (3d Cir. 1999).

Even a summary adjudication by the state court on the merits of a claim is entitled to § 2254(d) deference. Chadwick v. Janecka, 302 F.3d 107, 116 (3d Cir. 2002) (citing Weeks v. Angelone, 528 U.S. 225, 237 (2000)).  With respect to claims presented to, but unadjudicated by, the state courts, however, a federal court may exercise pre-AEDPA independent judgment.  See Hameen v. State of Delaware, 212 F.3d 226, 248 (3d Cir. 2000), cert. denied, 532 U.S. 924 (2001); Purnell v. Hendricks, 2000 WL

1523144, *6 n.4 (D.N.J. 2000).  See also Schoenberger v. Russell, 290 F.3d 831, 842 (6th Cir. 2002) (Moore, J., concurring) (and cases discussed therein).

The deference required by § 2254(d) applies without regard to whether the state court cites to Supreme Court or other federal caselaw, "as long as the reasoning of the state court does not contradict relevant Supreme Court precedent." Priester v. Vaughn, 382 F.3d 394, 398 (3d Cir. 2004) (citing Early v. Packer, 537 U.S. 3 (2002); Woodford v. Visciotti, 537 U.S. 19 (2002)).

Although a petition for writ of habeas corpus may not be granted if the Petitioner has failed to exhaust his remedies in state court, a petition may be denied on the merits notwithstanding the petitioner's failure to exhaust his state court remedies.  See 28 U.S.C. § 2254(b)(2); Lambert v. Blackwell, 387 F.3d 210, 260 n.42 (3d Cir. 2004); Lewis v. Pinchak, 348 F.3d 355, 357 (3d Cir. 2003).

Finally, a pro se pleading is held to less stringent standards than more formal pleadings drafted by lawyers.  Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 (1972).  A pro se habeas petition and any supporting submissions must be construed liberally and with a measure of tolerance.  See Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998); Lewis v. Attorney General, 878 F.2d 714, 721-22 (3d Cir. 1989);

United States v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969),

cert. denied, 399 U.S. 912 (1970).]

III.   ANALYSIS

A.   Admission of Confessions

Petitioner argues that the trial court should not have

admitted confessions he made to law enforcement personnel in May

1988.

A short chronology is necessary to an understanding of

Petitioner's arguments regarding the admission of his

confessions.

```
03/16/88  Aggravated Assault of Gloria Simonelli
04/07/88  Atlantic County Indictment charging Petitioner with
          aggravated assault
04/20/88  Petitioner retains Alfred Bennington, Jr. to represent
          him on aggravated assault charge.  Thereafter, Mr.
          Bennington advised the Atlantic County Prosecutor's
          Office of his representation.  "They were made aware of
          same by virtue of my having entered my usual and
          customary appearance by virtue of conversations I had
          with them shortly after being retained."  (Pet. Ex. 23
          at 351-53.)  In late April 1988, sometime after Gloria
          Simonelli was murdered, Bennington contacted the
          Atlantic County prosecutor's office again and reminded
          them that he represented Petitioner in connection with
          the aggravated assault.  He may have asked whether
          Petitioner was a suspect in the murder.
04/25/88  Gloria Simonelli murdered
04/27/88  Arrest warrant issued for Petitioner for murder
05/04/88  Criminal Complaint filed in U.S. District Court,
          District of New Jersey, alleging unlawful flight to
          avoid prosecution for murder.
05/12/88  Petitioner arrested in Columbia, S.C., and subjected to
          custodial interrogation by F.B.I. ("May 12
          Confession").
05/13/88  Federal Hearing at which Petitioner waived extradition.
          Hearing in South Carolina state court at which
          Petitioner waived extradition.  Subsequent custodial
          interrogation by Atlantic County Detective Al Juliano
```

9

```
                    and Lt. Raymond Walsh ("May 13 Confession").  Then
                    transported to Margate Police Department in New Jersey.
05/14/88            Custodial interrogation at Margate Police Department by
                    Atlantic County Detective Al Juliano and Lt. Raymond
                    Walsh ("May 14 Confession").
05/16/88            Arraigned in Atlantic County for murder.
06/08/88            Indictment for murder.
```

During <u>Miranda</u>[5] hearings before trial, Petitioner's counsel
argued that, with respect to the May 12 Confession, Petitioner
had stated that he did not want to answer the first question,
"Did you kill Gloria Simonelli," which should have been
understood as an assertion of his Fifth Amendment right to remain
silent, and any further statement was taken in violation of the
Fifth Amendment and should be inadmissible.  With respect to the
May 13 and 14 Confessions, Petitioner's trial counsel argued that
Petitioner was represented by a federal public defender at his
federal extradition hearing on May 13, and that any subsequent
interrogation without his counsel violated Petitioner's Sixth
Amendment right to counsel.  The judge determined that
Petitioner's confessions were voluntary and admissible.

Petitioner raised the same arguments on direct appeal.  The
Appellate Division found that the confessions were properly
admissible.

> The trial judge properly admitted into evidence
> the various confessions defendant gave after his
> arrest.  We briefly discuss the statement made to the
> FBI agents shortly after he was apprehended.

---

[5] <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966).

10

After defendant was advised of his right not to testify, he stated that he would talk to the agents about the killing.  He then signed a waiver of rights form.  When he was thereafter asked whether he killed the victim, he responded, "I'm not going to answer that," or "I'm not going to answer that right now." The trial judge found that defendant gave a narrative statement in which he admitted the killing, interrupted only occasionally by the agents for the sole purpose of asking clarifying questions.  Defendant thereafter signed a written statement summarizing this narrative. The judge concluded that defendant's oral narration and subsequent signed statement were voluntary.  He said:

> In the first instance, I am satisfied, as I have already indicated, that what immediately followed that assertion was not the result of any interrogation or questioning by the police.  I am satisfied that immediately upon articulating "I'm not going to answer that question," the defendant proceeded to initiate a dialogue with respect to the entire area and that there was no specific question that -- to which he was responding.

> Secondly, because I think even if that were not so, and there was some specific question that initiated what followed, which I don't find, I don't think that the statement in this context, "I'm not going to answer that question," is an assertion of the right to remain silent.  This man had been in this situation before, he testified here, and I believe him on this point, that he understood his rights, he had been through this process on several occasions, he knew he had a right to remain silent.

> I am satisfied from his demeanor and his manner of testifying here that when he started to talk, he was confident that he could do what he wanted to do, which was essentially, as he put it here, to say what he wanted to say and not to say what he didn't want to say.  And I think that's what was in his mind.  I think he thought he could do that.  And I think he thought there was no danger to himself in beginning to speak and in talking about what he wanted to talk about so long as he could control what he would say.  That's what he did here today, and that's what I'm

11

satisfied he did in South Carolina on May 12th,
1988.

That, as far as I am concerned, is a free,
voluntary, knowing, intelligent waiver of the
right to remain silent. What happened was, once
he got started, he couldn't stop himself.

The judge's finding of voluntariness is clearly
supported by substantial credible evidence in the
record. State v. Johnson, 42 N.J. 146, 162 (1964).
The agents were not required to re-administer Miranda
warnings to defendant because this was not police-
initiated interrogation following a suspect's
invocation of the right to remain silent. State v.
Fuller, 118 N.J. 75, 87 (1990). Defendant initiated a
narrative account after he said that he did not want to
say whether he killed the victim.

(Answer, Ex. Ra3.)

In his petition for post-conviction relief, Petitioner

raised this issue in the context of a claim that his trial

counsel had provided constitutionally deficient representation by

failing to learn that Petitioner was not represented by a federal

public defender during the federal extradition hearing in South

Carolina. During that federal extradition hearing, Petitioner

was advised by the court that he did not need an attorney for

that hearing. Petitioner then asked "Is this lady here my public

defender?" The court responded "You haven't been appointed an

attorney," and Petitioner responded, "I see." (Answer, Ex. Ra7

at Da39.) Petitioner argued in his PCR petition that this

exchange should have been construed as a request for counsel,

making the May 13 and 14 Confessions inadmissible under the Fifth

Amendment. Petitioner also argued that he should not have been

12

interrogated at all after Mr. Bennington advised the Atlantic
County Prosecutor's Office that he represented Petitioner on the
pending aggravated assault charge, because the murder charge was
"closely related" to the aggravated assault charge.  (Answer, Ex.
Ra14 at Da76 et seq.)  The trial court denied relief, finding
that the Appellate Division had already determined that the
statements were admissible.  On appeal, the Appellate Division
affirmed the denial of PCR relief.

> On appeal, defendant contends that he was denied
> the effective assistance of trial counsel and that an
> evidentiary hearing was required.  We have carefully
> reviewed these contentions and are satisfied that they
> are clearly without merit.  R. 2:11-3(e)(2).  We merely
> note that defendant has failed to establish a prima
> facie showing of ineffective assistance of counsel in
> support of his claim.  Therefore, the judge properly
> denied a hearing pursuant to State v. Preciose, 129
> N.J. 451, 462 (1992).  Defendant has also failed to
> show remediable ineffectiveness of assistance by his
> trial counsel.  See Strickland v. Washington, 466 U.S.
> 668, 687-88, 104 S.Ct. 2052, 2064-65, 80 L.Ed. 2d 674,
> 693-94 (1984); State v. Fritz, 105 N.J. 42, 58 (1987).

(Answer, ex. Ra10.)

In his second PCR petition, Petitioner again argued both
that the trial court had improperly admitted all of the May
Confessions and that trial counsel had provided constitutionally
deficient representation, under the Sixth Amendment, because
Petitioner was represented on the aggravated assault charge,
which he characterized as being closely related to the murder
charge, at the time of the May Confessions.  Thus, he alleged he

should not have been questioned outside the presence of Mr. Bennington.  The trial court rejected Petitioner's claim.

It was held in <u>State v. Tucker</u> that, "[i]f the offense under investigation is based on essentially the same factual context as the charged offense, assertion of the Sixth Amendment right to counsel on the charged offense should bar police-initiated interrogation on the related offense." <u>Tucker</u> quoted from <u>McNeil v. Wisconsin</u>, 501, U.S. 171, 175, 111 S.Ct. 2204, 2207, 115 L.Ed.2d 158, 166 (1991), stating that the Sixth Amendment right to counsel is offense-specific and "cannot be invoked once for all future prosecutions." However, both federal and state cases have recognized that "the Sixth Amendment right to counsel for a charged offense cannot be separated from another offense that is 'inextricably intertwined' or 'extremely closely related,' the offense being investigated must be based essentially on "the same factual context as the charged offense." <u>Id.</u> at 279. The assertion of the Sixth Amendment right to counsel on the charged offense will bar police-initiated interrogation on the related offense.  <u>Id.</u>

In the present case I find that the Defendant's Sixth Amendment right to counsel had not attached at the time of the interview conducted by the FBI agent in South Carolina or by the Atlantic County Investigator upon his arrival back in New Jersey.  This right did not attach for two reasons: (1) because formal proceedings hd not yet begun against the Defendant as to the murder charge; and (2) the murder and aggravated assault are not closely related or inextricably intertwined with the March 17, 1988 aggravated assault charge.

First, the Defendant's Sixth Amendment right to counsel did not attach to the murder because no formal charges or adversary judicial proceedings had been brought against the Defendant on that crime at the time of his confession. <u>Tucker</u>, 265 N.J. Super. at 319-320. It was held in <u>Tucker</u>, 265 N.J. Super. 296 (1993), that "an arraignment signals the 'initiation of adversary judicial proceedings' and thus attachment of the Sixth Amendment rights." <u>Id.</u> at 320, citing to <u>Michigan v. Jackson</u>, 475 U.S. 625, 629, 106 S.Ct. 1404, 1407, 89 L.Ed.2d 631, 638 (1986) (quoting <u>United States v.</u>

14

Gouveia, 467 U.S. 180, 187-188, 104 S.Ct. 2292, 2297, 81 L.Ed.2d 146, 153-154 (1984).  On May 12, 1988, day of confession, only a warrant had been issued in the Defendant's name, for the murder of the victim.  No other proceedings had been taken at this time against the Defendant for the murder.  Government investigations of new criminal activity for which the accused has not been indicted do not violate the Sixth Amendment right to counsel.  U.S. v. Kidd, 12 F.3d 30, 32 (4th Cir. 1993).

Second, the murder crime and aggravated assault charges arising from the shooting on April 25, 1988, are not so closely related with the aggravated assault on March 17, 1988, to warrant the attachment of the Sixth Amendment right to the murder offense.  The right to counsel presumably attached to the aggravated assault charge at the defendant's arraignment in March of 1988.  Therefore, no police initiated interrogation could occur for any crimes that arose from the same factual context and that were inextricably intertwined with the robbery charge.

In U.S. v. Kidd, 12 F.3d 30, 32 (4th Cir. 1993), the defendant was arrested on July 3, 1992, for the sale of CDS to informants made between November, 1991 and May, 1992.  On July 6, counsel was appointed and the defendant was released.  Kidd, 12 F.3d at 31. Later, on August 26, 1992, the defendant made another sale of CDS to an undercover officer who tape-recorded the sale.  Id. at 32.  As a result, the State obtained a superseding indictment which included the August 26 sale.  The defendant contended that the government informant violated his Sixth Amendment right to counsel because the August 26 sale was "so inextricably intertwined" or "extremely closely related" to the pending charges.  Id.  The court did not accept defendant's argument, and found that the offense being investigated did not derive from the same factual predicate as the charged offense.  The court held:

> The mere fact that both the pending charges and the new offense involved drug distribution does not mean the right to counsel attached to both. To hold otherwise would essentially permit charged suspects to commit similar crimes with impunity. ...  The Sixth Amendment does not create a sanctuary for the commission of additional crimes

during the pendency of an indictment.  Indeed, to exclude evidence pertaining to charges as to with the Sixth Amendment right to counsel had not attached at the time the evidence was obtained, simply because other charges were pending at the time, would unnecessarily frustrate the public's interest in the investigation of criminal activities.

Id. at 33.

Although the present case involves the same victim, the location and time are unrelated.  A month passed in between the aggravated assault of the victim and the murder of the victim.  Such a significant period of time passage clearly indicate[s] that the two crimes are not closely related.

In U.S. v. Arnold, 106 F.3d 37, 40 (1997), defendant worked as an armored car courier and stole approximately $480,000.  Id. at 39.  He told his then fiancee of the theft, and then later feared that she would tell the FBI.  Id.  Thus, defendant contacted two people to have her killed.  One of the proposed killers informed the FBI, and defendant, after some investigation, was indicted for bank theft, money laundering and witness intimidation.  Id.  Once defendant was charged with these crimes, the FBI sent one of the hit men to meet with defendant and taped a conversation in which defendant reasserted his desire to have her killed.  Id.  The government then obtained a superseding indictment charging defendant with the additional count of attempted murder [of] a witness. Id.

The Court adopted the "closely related" exception and held that it applied in Arnold.  It found that "the record showed that both charges:  (1) involve the same witness; (2) arise from the same facts and circumstances; (3) are closely related in time; and (4) involve conduct related to Arnold's attempt to prevent Jennifer Kloss from cooperating with federal authorities concerning his crimes."  Id. at 41.

Defendant's case can be distinguished from Arnold. In Arnold, the police knew that defendant wanted the witness dead, and essentially set defendant up with an informant in order to obtain proof as to the charge of

16

attempted murder.  The police had control of that
situation, and watched the charge of attempted murder
grow out of the sealed indictment for bank theft, money
laundering and witness intimidation.  However, in the
present case, the police did not know that defendant
would kill the victim.  It was not known at the time of
the aggravated assault that this would later escalate
to a murder.  thus, the two crimes were not "closely
related" or inextricably intertwined as the charges in
<u>Arnold.</u>

In addition "the fact an indicted defendant has
secured legal representation in the pending prosecution
does not preclude police from questioning the
defendant, in counsel's absence, about offenses for
which the defendant has not been indicted.  <u>McNeil v.
Wisconsin</u>, 501 U.S. 171, 175-177 (1991); <u>Maine v.
Moulton</u>, 474 U.S. 159, 179-180 (1985); <u>State v. Tucker</u>,
137 N.J. 276-78 (1995)."  State's Brief, pg. 1-2.

I do not find that the defendant's charges of
aggravated assault and murder were closely related or
inextricably intertwined.  The aggravated assault and
murder were on separate dates, and in separate places.
And, despite the fact that the victim is the same
person, there was different motivation for each of the
two crimes.  Also, it has not been proven that the
murder was part of the plan or criminal activity as the
attempted murder and witness intimidation charges were
in <u>Arnold</u>.  As such, defendant's application for post-
conviction relief is denied.

(Petitioner's Appendix 2, at Da339-345.)

On appeal from the denial of his second PCR petition, the

Appellate Division found the Confessions properly admitted.

Defendant contends that his Sixth Amendment right
to counsel was violated when FBI agents and
Prosecutor's investigators questioned him about
Simonelli's murder.  Specifically, he contends that
because he was represented by Bennington for the March
16 assault, he was represented for the murder charge
because both offenses were inextricably intertwined.
He also argues that at the time he spoke to the FBI
agents, he was represented by a federal public
defender.  We disagree.

The Sixth Amendment right to counsel is offense-specific. McNeil v. Wisconsin, 501 U.S. 171, 175, 111 S.Ct. 2204, 2207, 115 L.Ed.2d 158, 166 91991); State v. Tucker, 137 N.J. 259, 277 91994), cert. denied, 513 U.S. 1090, 115 S.Ct. 751, 130 L.Ed.2d 651 (1995).  This principle was recently reiterated by the United States Supreme Court in Texas v. Cobb, 532 U.S. 162, 121 S.Ct. 1335, 149 L.Ed.2d 321 (2001).  A defendant cannot invoke it once for all future prosecutions.  Ibid.  The right does not attach at all until the State obtains an indictment for the offense.  McNeil, supra, 501 U.S. at 175-76, 111 S.Ct. at 2207-08, 115 L.Ed.2d at 166-67; State v. P.Z., 152 N.J. 86, 110 (1997).  Once an accused asserts the right to counsel, with respect to a specific offense, it is clear that the police cannot question him any further about that offense.  Edwards v. Arizona, 451 U.S. 477, 484-85, 101 S.Ct. 1880, 1884-85, 68 L.Ed.2d 378 (1981)

As a corollary proposition, the police may not question such an accused about related offenses under investigation that are "inextricably intertwined" or "extremely closely related" to the offense for which he has asserted the right to counsel.  State v. Tucker, 137 N.J. at 278-79.  See united States v. Doherty, 126 F.3d 769, 776 (6th Cir. 1997) (overruled on other grounds), cert. denied, 524 U.S. 917, 118 S.Ct. 2299, 141 L.Ed.2d 159 (1998); Commonwealth v. Rainwater, 681 N.E.2d 1218, 1223-29 (Mass. 1997), cert. denied, 522 U.S. 1095, 118 S.Ct. 892, 139 L.Ed.2d 878 (1998).  The right to counsel must be separately asserted with respect to unrelated offenses.  United States v. Kidd, 12 F.3d 30, 33 (4th Cir. 1993), cert. denied, 511 U.S. 1059, 114 S.Ct. 1629, 128 L.Ed.2d 352 (1994).  The Sixth Amendment creates no "sanctuary for the commission of additional crimes during the pendency of an indictment."  Ibid.  The "extremely closely related" exception must be construed to avoid hampering legitimate law enforcement investigations.  United States v. Melgar, 139 F.3d 1005, 1013-15 (4th Cir. 1998) (overruled on other grounds).  See Maine v. Moulton, 474 U.S. 159, 180 n.16, 106 S.Ct. 477, 489 n.16, 88 L.Ed. 2d 481, 499 n.16 (1985) ("[i]ncriminating statements pertaining to other crimes, as to which the Sixth Amendment right has not yet attached, are, of course, admissible ...");  State v. P.Z., 152 N.J. at 110 (police may question defendant

during pre-indictment investigation without implicating the Sixth Amendment).

Here, defendant was not indicted for Simonelli's murder until after his voluntary waiver of <u>Miranda</u> rights, and confessions to this crime. The March 16 assault and murder were not identical or similar. They involved different time, place, and conduct. They were motivated by different purposes. Defendant killed Simonelli to forestall prosecution of the assault charge. This, of course, was not the motivation for the assault. In fact, the only link between the two events is violence towards the same victim. This is not enough.

Accordingly, we conclude that Judge Guerrera's findings that the March 16 assault and the murder were not inextricably intertwined is supported by the proofs presented. <u>State v. Johnson</u>, 42 N.J. 146, 162 (1964). Bennington's representation of defendant on the earlier incident did not vitiate the spontaneous and voluntary confessions made without benefit of counsel, to the FBI agents and Atlantic County Investigators. A <u>fortiori</u>, even if defendant was represented by a federal public defender regarding his extradition to New Jersey, such representation had no connection to the underlying offenses. In short, defendant's constitutional rights to counsel were not violated.

(Answer, Ex. Ra22.)

Petitioner contends here that the admission of his May Confessions violated both his Fifth Amendment right to remain silent and his Fifth and Sixth Amendment rights to counsel.

1. <u>The Fifth Amendment Right to Remain Silent</u>

Pursuant to the Fifth Amendment to the United States Constitution, "No person ... shall be compelled in any criminal case to be a witness against himself ... ." In <u>Miranda v. Arizona</u>, the Supreme Court of the United States held that:

> when an individual is taken into custody or otherwise
> deprived of his freedom by the authorities in any
> significant way and is subjected to questioning, the
> privilege against self-incrimination is jeopardized.
> Procedural safeguards must be employed to protect the
> privilege and unless other fully effective means are
> adopted to notify the person of his right of silence
> and to assure that the exercise of the right will be
> scrupulously honored, the following measures are
> required.  He must be warned prior to any questioning
> that he has the right to remain silent, that anything
> he says can be used against him in a court of law, that
> he has the right to the presence of an attorney, and
> that if he cannot afford an attorney one will be
> appointed for him prior to any questioning if he so
> desires.  Opportunity to exercise these rights must be
> afforded to him throughout the interrogation.  After
> such warnings have been given, and such opportunity
> afforded him, the individual may knowingly and
> intelligently waive these rights and agree to answer
> questions or make a statement.  But unless and until
> such warnings and waiver are demonstrated by the
> prosecution at trial, no evidence obtained as a result
> of interrogation can be used against him.

384 U.S. at 478-79 (footnote omitted).

A waiver may be made orally or may be implied from a suspect's conduct.  See North Carolina v. Butler, 441 U.S. 369, 373 (1979); United States v. Cruz, 910 F.2d 1072, 1080 (3d Cir. 1990), cert. denied, 498 U.S. 1039 (1991).  To introduce into evidence a suspect's statement made during custodial interrogation, the government must establish, by a preponderance of the evidence, a voluntary waiver of Miranda rights.  Colorado v. Connelly, 479 U.S. 157, 168-69 (1986).  This is a rule of constitutional dimension, violation of which may justify issuance of a writ of habeas corpus.  See generally Dickerson v. United States, 530 U.S. 428 (2000).

> Once warnings have been given, the subsequent
> procedure is clear.  If the individual indicates in any
> manner, at any time prior to or during questioning,
> that he wishes to remain silent, the interrogation must
> cease.  At this point he has shown that he intends to
> exercise his Fifth Amendment privilege; any statement
> taken after the person invokes his privilege cannot be
> other than the product of compulsion, subtle or
> otherwise.  Without the right to cut off questioning,
> the setting of in-custody interrogation operates on the
> individual to overcome free choice in producing a
> statement after the privilege has been once invoked.

Miranda, 384 U.S. at 473-74.  A defendant's right to cut off

questioning must be "scrupulously honored."  Michigan v. Mosley,

423 U.S. 96, 103-04 (1975).

Here, the state courts correctly found that Petitioner's

statement that he did not want to answer a particular question

did not amount to an assertion of his right to remain silent and

cut off questioning.  Cf. U.S. v. Gordon, 895 F.2d 932, 938-39

(4th Cir. 1990); United States v. Matthews, 417 F.Supp. 813 (E.D.

Pa. 1976).

"The requirement that Miranda warnings be given does not, of

course, dispense with the voluntariness inquiry.  But ...

'[c]ases in which a defendant can make a colorable argument that

a self-incriminating statement was 'compelled' despite the fact

that the law enforcement authorities adhered to the dictates of

Miranda are rare.'"  Dickerson, 530 U.S. at 444.

"[T]he ultimate issue of 'voluntariness' is a legal question

requiring independent federal determination," and is thus not

subject to the § 2254(d) presumption of correctness.  Miller v.
Fenton, 474 U.S. 104, 109-110 (1985).

> The Supreme Court has made clear that a statement
> is involuntary when the suspect's "will was overborne
> in such a way as to render his confession the product
> of coercion." Arizona v. Fulminante, 499 U.S. 279, 288,
> 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991). In determining
> whether a statement is voluntary, Supreme Court
> precedent requires consideration of "the totality of
> all the surrounding circumstances--both the
> characteristics of the accused and the details of the
> interrogation." Dickerson v. United States, 530 U.S.
> 428, 434, 120 S.Ct. 2326, 147 L.Ed.2d 405 (2000)
> (quoting Schneckloth v. Bustamonte, 412 U.S. 218, 226,
> 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973)). These
> surrounding circumstances include "not only the crucial
> element of police coercion, Colorado v. Connelly, 479
> U.S. 157, 167, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986),"
> but may also include "the length of the interrogation,
> its location, its continuity, the defendant's maturity,
> education, physical condition, and mental health."
> Withrow v. Williams, 507 U.S. 680, 693, 113 S.Ct. 1745,
> 123 L.Ed.2d 407 (1993) (some internal citations
> omitted).

Lam v. Kelchner, 304 F.3d 256, 264 (3d Cir. 2002).  "[S]ubsidiary
questions, such as the length and circumstances of the
interrogation, the defendant's prior experience with the legal
process, and familiarity with the Miranda warnings, often require
the resolution of conflicting testimony of police and defendant.
The law is therefore clear that state-court findings on such
matters are conclusive on the habeas court if fairly supported in
the record and if the other circumstances enumerated in § 2254(d)
are inapplicable." Dickerson, 474 U.S. at 117.

Here, there is no evidence suggesting that the state courts were incorrect in their findings that Petitioner's statement was voluntary.  Petitioner is not entitled to relief on this claim.

2.   The Fifth Amendment Right to Counsel

In Miranda v. Arizona, 384 U.S. 436 (1966), the Supreme Court held that the Fifth and Fourteenth Amendments' prohibition against compelled self-incrimination required that custodial interrogation be preceded by advice to the defendant that he has the right to remain silent and also the right to an attorney.  If an accused requests counsel, "the interrogation must cease until an attorney is present."  384 U.S. at 474.  "[W]hen an accused has invoked his right to have counsel present during custodial interrogation, a valid waiver of that right cannot be established by showing only that he responded to further police-initiated custodial interrogation even if he has been advised of his rights[; instead, he] is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police."  Edwards v. Arizona, 451 U.S. 477, 484-85 (1981).

In order to invoke his Fifth Amendment right to counsel, the suspect must "unambiguously" request counsel.  Davis v. United States, 512 U.S. 452, 459 (1994).  "It requires, at a minimum, some statement that can reasonably be construed to be an

expression of a desire for the assistance of an attorney <u>in dealing with custodial interrogation by the police</u>.  <u>McNeil v. Wisconsin</u>, 501 U.S. 171, 178 (1991) (emphasis in original).  "Once a suspect asserts the right, not only must the current interrogation cease, but he may not be approached for further interrogation, on any related or unrelated investigation, "until counsel has been made available to him."  <u>McNeil</u>, 501 U.S. at 176-77 (quoting <u>Edwards</u>, 451 U.S. at 484-85).[6]

However, the assertion of the Sixth Amendment right to counsel, for example at a bail hearing or an arraignment, is not, in itself, sufficient to constitute the invocation of the Fifth Amendment right to counsel at a subsequent custodial interrogation, even if that interrogation concerns the same offense.  <u>See</u> <u>McNeil v. Wisconsin</u>, 501 U.S. at 177-180; <u>Flamer v. State of Delaware</u>, 68 F.3d 710 (3d Cir. 1995).

Here, Plaintiff does not allege that he unambiguously requested counsel during any of the May interrogations.  Any request for counsel that he may have made at his extradition hearings is insufficient to constitute an invocation of his Fifth

---

[6] This Court does not construe the Petition as arguing that Petitioner unambiguously asserted his Fifth Amendment right to counsel during any of the May interrogations or during any earlier interrogation related to the aggravated assault charge. In any event, a break in custody between any earlier interrogations and the May interrogations would have dissolved any <u>Edwards</u> claim.  <u>See</u> <u>Dunkins v. Thigpen</u>, 854 F.2d 394 (11th Cir. 1988) and cases cited therein.

Amendment right to counsel at a subsequent custodial interrogation.  Nor does his representation by counsel on the earlier aggravated assault charges amount to an invocation of his Fifth Amendment right to counsel at the May interrogations.  The state courts correctly found no violation of Petitioner's Fifth Amendment right to counsel.  Petitioner is not entitled to relief on this claim.

    3.   <u>The Sixth Amendment Right to Counsel</u>

    The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defence."  The Sixth Amendment right to counsel "is offense specific.  It cannot be invoked once for all future prosecutions, for it does not attach until a prosecution is commenced, that is, at or after the initiation of adversary judicial criminal proceedings – whether by way of formal charge, preliminary hearing, indictment, information, or arraignment."  <u>McNeil v. Wisconsin</u>, 501 U.S. 171, 175 (1991) (citations and internal quotation marks omitted).  Although the Sixth Amendment right to counsel attaches only to charged offenses, "the definition of an 'offense' is not necessarily limited to the four corners of a charging instrument."  <u>Texas v. Cobb</u>, 532 U.S. 162, 173 (2001).  Instead, "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are

two offenses or only one, is whether each provision requires proof of a fact which the other does not." Blockburger v. United States, 284 U.S. 299, 304 (1932), quoted in Texas v. Cobb, 532 U.S. at 173.  Thus, "when the Sixth Amendment right to counsel attaches, it does encompass offenses that, even if not formally charged, would be considered the same offense under the Blockberger test." Texas v. Cobb, 532 U.S. at 173.  The Sixth Amendment right to counsel does not, however, attach to uncharged, factually-related crimes. Texas v. Cobb, 532 U.S. at 166-72.

Here, it is undisputed that Petitioner was not indicted or represented with respect to the murder charges at the time he made his May 12, 13, and 14 Confessions.  The fact that the aggravated assault and the murder were committed against the same victim, a month apart, is not sufficient to find the May interrogations a violation of the Sixth Amendment.  The State court determinations were neither contrary to nor an unreasonable application of clearly established federal law.  Petitioner is not entitled to relief on this claim.

B.   Ineffective Assistance of Trial Counsel

The Counsel Clause of the Sixth Amendment provides that a criminal defendant "shall enjoy the right ... to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. The right to counsel is "the right to effective assistance of

counsel." McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970)
(emphasis added).

To prevail on a claim of ineffective assistance of counsel,
a habeas petitioner must show both that his counsel's performance
fell below an objective standard of reasonable professional
assistance and that there is a reasonable probability that, but
for counsel's unprofessional errors, the outcome would have been
different. Strickland v. Washington, 466 U.S. 668, 687, 694
(1984). A "reasonable probability" is "a probability sufficient
to undermine confidence in the outcome." Strickland at 694.
Counsel's errors must have been "so serious as to deprive the
defendant of a fair trial, a trial whose result is reliable."
Id. at 687. "When a defendant challenges a conviction, the
question is whether there is a reasonable probability that,
absent the errors, the factfinder would have had a reasonable
doubt respecting guilt." Id. at 695.

The Performance and prejudice prongs of Strickland may be
addressed in either order, and "[i]f it is easier to dispose of
an ineffectiveness claim on the ground of lack of sufficient
prejudice ... that course should be followed." Id. at 697.

There is "a strong presumption that counsel's conduct falls
within the wide range of reasonable professional assistance."
Strickland, 466 U.S. at 689. As a general matter, strategic
choices made by counsel after a thorough investigation of the

facts and law are "virtually unchallengeable," though strategic choices "made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." Id. at 690-91. If counsel has been deficient in any way, however, the habeas court must determine whether the cumulative effect of counsel's errors prejudiced the defendant within the meaning of Strickland. See Berryman v. Morton, 100 F.3d 1089, 1101-02 (3d Cir. 1996).

### 1. Admission of the Confessions

Petitioner argues that counsel was ineffective at the Miranda hearings, for failing to correct factual errors regarding Petitioner's representation by counsel at his federal extradition hearing, and for failing to argue that the May Confessions should not have been admitted because of Petitioner's prior representation by Bennington.

This Court has found no error in the admission of Petitioner's May Confessions. As there was no error in admission of Petitioner's May Confessions, Petitioner's counsel did not provide constitutionally deficient performance in failing to correct factual errors or make certain constitutional arguments to avoid their admission. See United States v. Sanders, 165 F.3d 248, 253 (3d Cir. 1999) (under Strickland, "[t]here can be no

28

Sixth Amendment deprivation of effective counsel based on an attorney's failure to raise a meritless argument").

   2.   <u>Failure to Challenge In-Court Identifications</u>

   Petitioner contends that trial counsel provided ineffective assistance by failing to properly challenge the in-court identification by two witnesses, Tonya Martin and Patrick Sullivan, both of whom had been unable to identify Petitioner in photo arrays shown them by the police during the investigation.

   The PCR court and the Appellate Division rejected these claims without discussion.

   This claim suffers from any explanation as to how the alleged errors raise a reasonable probability that, but for counsel's alleged errors, the outcome would have been different. Petitioner's counsel did challenge, on cross-examination, the identifications made by these witnesses.  (Answer, Ex. Ra31 at 204-09 and 229-38.)  Petitioner did not dispute that he killed Gloria Simonelli.  (Answer, Ex. Ra35 at 49-50.)  Moreover, the May Confessions were admissible, and Petitioner made other confessions to other people.  Petitioner is not entitled to relief on this claim.

   3.   <u>Failure to Call Exculpatory Witness</u>

   Petitioner complains that his counsel failed to call Darlene Florich as a witness, explaining that she saw a car leaving the

scene of the murder and that she could identify the occupant of the car as someone other than Petition, whom she knew.

The PCR court and the Appellate Division denied this claim without discussion.

In the face of Petitioner's failure to deny that he killed the victim and his multiple confessions to the crime, it is again clear that any alleged error does not raise a reasonable probability that, but for counsel's alleged error, the outcome would have been different.  Petitioner is not entitled to relief on this claim.

4.   Failure to Object to Testimony of Police Informant

Petitioner contends that his counsel should have objected to the testimony of police informant Robert Brooks, who had testified that after the date of the aggravated assault, but before the date of the murder, Petitioner had told him that he intended to kill the victim.  Mr. Brooks also testified as to conversations he had with Petitioner after the murder.[7] Petitioner's contends that these conversations violated his right to counsel under the Sixth Amendment, so counsel should have objected.

To the extent any error occurred, again, in view of the circumstances of the crime, Petitioner's numerous admissible

---

[7] It is not clear whether these conversations took place before or after Petitioner's indictment.

confessions, and the other witnesses to the crime, there is no reasonable probability that, but for the alleged error, the outcome would have been different.

    5.  <u>Failure to Object to Admission of Hearsay Statements</u>

    Petitioner contends that his counsel should have objected to the admission of hearsay testimony consisting of the victim's statements to her family and a friend.  The Appellate Division addressed this claim in the context of an alleged evidentiary error, rather than in the context of ineffective assistance of counsel, and found any error to be harmless.

> Defendant also contends that it was error to admit the victim's statements to her father and a friend that she was determined to press criminal charges against defendant.  The State offered these statements as proof of defendant's motive and state of mind at the time of the killing.  Defendant argues that the statements were inadmissible because there was no proof that he knew they were made by the victim and they therefore could not affect his state of mind.  <u>State v. Dreher</u>, 251 N.J. Super. 300, 317-19 (Appl. Div. 1991), <u>certif. denied</u>, 127 N.J. 564 (1992).  Unlike <u>Dreher</u>, defendant did not deny killing the victim.  The central question at trial was defendant's state of mind.  The record is replete with evidence that defendant knew that the victim intended to press criminal charges against him and that, to silence her, he planned to kill her.  He told several people both before and after he shot the victim that she was pressing charges against him. Admission of these proofs was harmless error beyond a reasonable doubt.  <u>State v. Macon</u>, 57 N.J. 325, 340 (1971).

> The victim's statements to her parents about the vicious beating administered her by defendant, made about six hours after the incident, were given at the time when she was still under the stress of these events.  <u>State v. Bass</u>, 221 N.J. Super. 466, 481 (Appl Div. 1987), <u>certif. denied</u>, 110 N.J. 186 (1988).  They

were therefore admissible as an excited utterance under Evid. R. 63(4)(b).

(Ex. Ra3.)

Here, the state courts have determined either that there was no error in the admission of the hearsay statements or that such admission was harmless error beyond a reasonable doubt.  These determinations are entitled to deference here.  To the extent error occurred, Petitioner has not established that there is a reasonable probability that, but for counsel's unprofessional errors, the outcome would have been different.

In light of the state court's ruling on the underlying evidentiary question, even if this claim is not exhausted, this Court will exercise its discretion to deny the claim.  28 U.S.C. § 2254(b)(2).

6.  <u>Aggregate Error</u>

Petitioner contends that counsel's errors cumulatively constitute ineffective assistance of trial counsel.

Petitioner's claim is meritless.  Petitioner did not dispute that he killed the victim.  He made numerous admissible confessions regarding the circumstances of the killing.  To the extent there were errors in the conduct of cross-examination of certain witnesses or in the admission of hearsay testimony, it is clear that such errors were harmless.

C.    Ineffective Assistance of Appellate Counsel

The Supreme Court has held that the Due Process Clause of the Fourteenth Amendment guarantees a defendant the effective assistance of counsel on a first direct appeal as of right. Evitts v. Lucey, 469 U.S. 387 (1985).  The Strickland standard for effective assistance of counsel applies to appellate counsel. See Lewis v. Johnson, 359 F.3d 646, 656 (3d Cir. 2004). Appellate counsel does not have a duty to advance every nonfrivolous argument that could be made, see Jones v. Barnes, 463 U.S. 745, 754 (1983), but a petitioner may establish that appellate counsel was constitutionally ineffective "if he shows that counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker," Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994).

Here, Petitioner claims that his appellate counsel provided ineffective assistance by failing to raise the claims of error raised here.  As this Court has found that these claimed errors do not entitle Petitioner to any relief, there was no ineffective assistance of appellate counsel.  Petitioner is not entitled to relief on this claim.

D.    Aggregate Error

Petitioner contends that the aggregate errors alleged here deprived him of his fundamental right to a fair trial.

33

Respondents allege that this claim is unexhausted.  As it is clear, however, from the discussion above, that any errors that may have occurred were harmless, this Court will exercise its discretion to deny this claim.  <u>See</u> 28 U.S.C. § 2254(b)(2).

## IV.  <u>CERTIFICATE OF APPEALABILITY</u>

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254. A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 327 (2003).

Here, Petitioner has failed to make a substantial showing of the denial of a constitutional right.  No certificate of appealability shall issue.

V.   <u>CONCLUSION</u>

For the reasons set forth above, the Petition must be

denied.  An appropriate order follows.

s/Joseph E. Irenas
Joseph E. Irenas
United States District Judge

Dated:  October 28, 2005